IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ERIC GARCIA RODRIGUEZ,

    Plaintiff,

    v.                                          CIVIL NO. 03-2238 (RLA)

JOSE A. ANDREU GARCIA, et al.,

    Defendants.

**ORDER IN THE MATTER OF DEFENDANTS' MOTION TO DISMISS
AND MOTION FOR JUDGMENT ON THE PLEADINGS**

The Court has before it for disposition the Motion to Dismiss filed pursuant to Rule 12(b)(6) Fed. R. Civ. P. as well as the Motion for Judgment on the Pleadings submitted in accordance with the provisions of Rule 12(c) Fed. R. Civ. P. Based on the briefs submitted by the parties as well as the applicable law, the Court hereby rules as follows.

**BACKGROUND**

This is an action arising from plaintiff's arrest for having failed to meet his child support obligations. The Amended Complaint (docket No. 48) alleges a due process violation as well as false imprisonment pursuant to 42 U.S.C. § 1983 in addition to local claims. Named defendants are four local marshals as well as Jaime Santiago ("Santiago") and Edwin Perez-Febus ("Perez-Febus"), both supervisors.

On October 22, 2002, an Arrest Warrant was issued against plaintiff for having failed to pay child support in the sum of

**CIVIL NO. 03-2238 (RLA)**                                                    **Page 2**

$27,420.00. The warrant provided that "[o]nce arrested, the defendant **shall be taken before a magistrate** to show evidence of partial payment of $10,000.000 (the minimum amount required for release). [Absent] evidence of such payment, **the magistrate must order his incarceration**". (Emphasis ours).

On November 15, 2002, an unknown marshal visited plaintiff's residence looking for him. Inasmuch as plaintiff was not home at the time, the marshal left a message for plaintiff to visit the Marshal's Office located at the Caguas Courthouse as soon as possible.

On November 18, 2002, plaintiff visited the Marshal's Office and was allegedly referred to the Arrests Division whereupon he was arrested and taken to the Bayamon Penitentiary where he remained for five days until he was able to post bail.

Plaintiff alleges that the failure to take him before a judge prior to his incarceration as commanded by the Arrest Warrant violated his constitutional guarantees to be free from false imprisonment and right to due process.

### RULE 12(b)(6)

In disposing of motions to dismiss pursuant to Rule 12(b)(6) Fed. R. Civ. P. the court will accept all factual allegations as true and will make all reasonable inferences in plaintiff's favor. Frazier v. Fairhaven Sch. Com., 276 F.3d 52, 56 (1st Cir. 2002); Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001); Berezin v. Regency Sav. Bank, 234 F.3d

68, 70 (1st Cir. 2000); Tompkins v. United Healthcare of New England, Inc., 203 F.3d 90, 92 (1st Cir. 2000).

Our scope of review under this provision is a narrow one. Dismissal will only be granted if after having taken all well-pleaded allegations in the complaint as true, the Court finds that plaintiff is not entitled to relief under any theory. Brown v. Hot, Sexy and Safer Prods., Inc., 68 F.3d 525, 530 (1st Cir. 1995) *cert. den.* 116 S.Ct. 1044 (1996); Vartanian v. Monsanto Co., 14 F.3d 697, 700 (1st Cir. 1994). Further, our role is to examine the complaint to determine whether plaintiff has adduced sufficient facts to state a cognizable cause of action. Alternative Energy, 267 F.3d at 36. The complaint will be dismissed if the court finds that under the facts as pleaded plaintiff may not prevail on any possible theory. Berezin, 234 F.3d at 70; Tompkins, 203 F.3d at 93.

As part of its Rule (12)(b)(6) examination the court is allowed to look at matters outside the pleadings which have been "fairly incorporated within it and matters susceptible to judicial notice" without converting it into a summary judgment petition. In re Colonial Mortgage, 324 F.3d at 15. In other words, in cases where "'a complaint's factual allegations are expressly linked to - and admittedly dependent upon - a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).'" Perry v. New England Bus. Serv., Inc., 347

**CIVIL NO. 03-2238 (RLA)**                                                      **Page 4**

F.3d 343, 345 n.2 (citing Beddall v. State St. Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998).

Hence, we may take into consideration the Arrest Warrant provisions without converting the petition into a summary judgment request.

## RULE 12(c)

Rule 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay trial, any party may move for judgment on the pleadings." The standard for ruling on a motion filed under Rule 12(c) is essentially the same as that for deciding on a motion to dismiss filed under Rule 12(b)(6). "[T]he trial court must accept all of the nonmovant's well-pleaded factual averments as true, and draw all reasonable inferences in his favor... The motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." McCord v. Horace Mann Ins. Co., 390 F.3d 138, 141 (1st Cir. 2004) (citations omitted). "Because such a motion calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom to the nonmovant's behoof (sic)." R.G. Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 182 (1st Cir. 2006). "There is no resolution of contested facts in connection with a Rule 12(c) motion: a court may enter judgment on the pleadings only if the properly

**CIVIL NO. 03-2238 (RLA)**                                                                 **Page 5**

considered facts conclusively establish the movant's point." *Id. See also*, Aponte-Torres v. Univ. of Puerto Rico, 445 F.3d 50, 54 (1st Cir. 2006).

Hence, under either of the two aforementioned procedural routes the facts as alleged in the complaint are deemed uncontested.

## SECTION 1983

Section 1983 does not create substantive rights but is rather a procedural mechanism for enforcing constitutional or statutory rights. Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); Cruz-Erazo v. Rivera-Montañez, 212 F.3d 617, 621 (1st Cir. 2000). The statute, i.e., § 1983 "'is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred... by the United States Constitution and federal statutes.'" Rodriguez Garcia v. Municipality of Caguas, 354 F.3d 91, 99 (1st Cir. 2004) (*citing* Baker v. McCollan, 443 U.S. 137, 144 n.3, 99 S.C. 2689, 61 L.Ed.2d 433 (1979)).  Hence, it is plaintiffs' burden to identify the particular underlying constitutional or statutory right that is sought to be enforced via judicial proceedings.

In order to prevail in a § 1983 claim plaintiff must bring forth evidence that (1) defendant acted "under color of state law" and (2) deprivation of a federally protected right. Rogan v. City of Boston, 267 F.3d 24 (1st Cir. 2001); Dimarco-Zappa v. Cabanillas, 238 F.3d 25,

**CIVIL NO. 03-2238 (RLA)**                                                    **Page 6**

---

33 (1st Cir. 2001); Collins v. Nuzzo, 244 F.3d 246 (1st Cir. 2001); Cruz-Erazo, 212 F.3d at 612; Barreto-Rivera, 168 F.3d at 45.

There does not seem to be a controversy regarding the "state action" requirement in this case. Thus, we must proceed to examine whether plaintiff has sufficiently alleged a violation of federally protected rights.

### Supervisory Liability

Prior to addressing the viability of the constitutional rights cited by plaintiff, we must ascertain whether there is any colorable claim against the supervisors in their capacity as such.

The doctrine of *respondeat superior*, whereby liability is imposed on employers for the acts or omissions of their employees is inapposite in actions brought under § 1983. Supervisors will be held accountable under this provision solely "on the basis of [their] own acts or omissions". Barreto-Rivera, 168 F.3d at 48; Diaz v. Martinez, 112 F.3d 1, 4 (1st Cir. 1997); Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994); Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989). "[O]nly those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable." Cepero-Rivera, 414 F.3d at 129.

Rather, "[s]uch liability can arise out of participation in a custom that leads to a violation of constitutional rights, or by acting with deliberate indifference to the constitutional rights of others." Diaz v. Martinez, 112 F.3d at 4 (citations omitted).

**CIVIL NO. 03-2238 (RLA)**                                                          **Page 7**

Further, in order for plaintiff to prevail he must bring evidence of a casual connection or relationship between the alleged misconduct and the supervisor's acts or omissions. "A supervisory officer may be held liable for the behavior of his subordinate officers where his action or inaction [is] affirmative[ly] link[ed]... to that behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference." Wilson v. Town of Mendon, 294 F.3d 1, 6 (1st Cir. 2002) (citations and internal quotations omitted); Figueroa-Torres v. Toledo-Davila, 232 F.3d 270, 279 (1st Cir. 2000); Barreto-Rivera, 168 F.3d at 48; Maldonado-Denis, 23 F.3d at 582; Gutierrez-Rodriguez, 882 F.2d at 562.

Plaintiff claims that the two named supervisors are liable both in their supervisory role as well as based on their own conduct. However, there are no allegations in the amended pleading which would even remotely tie any acts or omissions on the part of Santiago and/or Perez-Febus - in their capacity as supervisors - to the claims asserted in the complaint. The mere fact that these defendants were supervisors of any or all of the other named defendants does not automatically establish a colorable claim against them for their subordinates' misconduct.

Specifically, the Amended Complaint charges Santiago and Perez-Febus as follows:

**CIVIL NO. 03-2238 (RLA)**                                           **Page 8**

>   [Codefendants] were the supervisors of the agents who participated in the events referred [in the complaint]. They were responsible for their **own** illegal actions to plaintiff **and** in their **supervisory capacity** for their deliberate indifference to [plaintiff's] civil rights.

Amended Complaint ¶ 5 (emphasis ours).

>   Defendants Perez Febus, Aviles, Aldebol, and/or Maldonado Santiago sent plaintiff to the Arrests Division of the Office. [D]efendants Santiago and/or Salabarria and the other defendants arrested plaintiff, placed him in an official vehicle and transported him to the Bayamon Penitentiary Institution. Defendants told plaintiff he was going to stay there until he paid the $10,000.00 the warrant ordered.

Amended Complaint ¶ 15.

In opposition to the requests for dismissal plaintiff argues that the supervisors "knew or should have known that defendants Salabarria and Santiago were improperly trained, had a poor psychological profile and social history and background, with an emotional inclination to violence and, thus, are tightly linked to the violation of plaintiff's constitutional rights." Opposition to Defendants' Motion for Judgment on the Pleadings (docket No. 63) p.7. This argument, however, has no basis on the bare allegations in the complaint which we transcribed *ante*.

**CIVIL NO. 03-2238 (RLA)**                                                                 **Page 9**

We also note that it is almost impossible to ascertain from a reading of the Amended Complaint who did what to whom in this case. The allegations in the pleading are sketchy and the information proffered in the motion requesting leave to amend the complaint and those filed in opposition to the petitions for dismissal seem to have contradictory information as to who were the key players in the events giving rise to this litigation. However, one thing remains clear, under the facts as pleaded plaintiff may not prevail on a supervisory liability theory against either Santiago and/or Perez-Febus.

Accordingly, the allegations against Santiago and Perez-Febus in their capacity as supervisors[1] in this case are hereby **DISMISSED**.

### Fourth Amendment

The right to be free from false imprisonment stems from the Fourth Amendment's protection against unreasonable searches and seizures. Peña-Borrero v. Estremeda, 365 F.3d 7, 13 n.8 (1st Cir. 2004). In order to prevail in his false imprisonment claim plaintiff would need to establish that: "(1) the defendant intended to confine [him]; (2) [he] was conscious of the confinement; (3) [he] did not consent to the confinement; and (4) the defendant had no privilege to cause the confinement." Calero-Colon v. Betancourt-Lebron, 68 F.3d 1, 3 n.6 (1st Cir. 1995).

---

[1] This finding is without prejudice of their alleged direct participation in plaintiff's imprisonment.

**CIVIL NO. 03-2238 (RLA)**                                                              **Page 10**

Inasmuch as we are required to accept plaintiff's facts as proffered we must assume that the arresting officers had no authority under the terms of the warrant to incarcerate plaintiff. The warrant solely empowered the marshals to arrest plaintiff and to deliver him before a judge. The authority to imprison plaintiff lay with the court, not the marshal.

Hence, defendants' request for dismissal of the false imprisonment claim is **DENIED**.

### Due Process

Defendants allege that the Fifth Amendment protection is limited to actions by the federal government. Even though it is not yet clear whether due process safeguards apply to Puerto Rico under the Fifth or the Fourteenth Amendments to the U.S. Constitution, regardless of its constitutional source, the essence of the protection is the same under both. Tenoco Oil Co., Inc. v. Dep't of Consumer Affairs, 876 F.2d 1013, 1017 n.9 (1st Cir. 1989); Santana v. Collazo, 714 F.2d 1172, 1174 n. 1 (1st Cir. 1983); Wehran-Puerto Rico v. Municipality of Arecibo, 106 F.Supp.2d 276, 287 n.25 (D.P.R. 2000).

In order to properly assert a procedural due process claim under § 1983, plaintiff must show that: (1) he had a property interest and (2) that defendants, acting under color of state law, deprived him of that property interest without providing him with a constitutionally adequate procedure. Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 56 (1st Cir. 2006); Licari v. Ferruzzi, 22 F.3d 344, 347 (1st Cir. 1994);

**CIVIL NO. 03-2238 (RLA)**                                                                 **Page 11**

Rumford Pharmacy v. City of East Providence, 970 F.2d 996, 999 (1st Cir. 1992); PFZ Properties v. Rodriguez, 928 F.2d 28, 30 (1st Cir. 1991). "Under the Due Process Clause of the Fourteenth Amendment, persons who possess a property interest... cannot be deprived of that interest without due process of law." Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 6 (1st Cir. 2000).

Defendants argue that there was no such deprivation in the instant case "since it was the Honorable Judge the one that issued the arrest warrant in a contempt hearing held against him for failure to pay alimony." Motion to Dismiss (docket No. 62) p.12; Motion for Judgment on the Pleadings (docket No. 63) p. 12.

We disagree with defendants' reading of the Arrest Warrant. The court Order specifically directed the marshal, upon plaintiff's arrest, to take him before a magistrate who would be the one responsible for ordering plaintiff's incarceration absent evidence of payment of the $10.000.00. It is uncontested that the defendants who executed the arrest warrant by-passed the magistrate - an essential step for due process compliance - and took him directly to prison.

Accordingly, the petition to dismiss the due process claim is **DENIED**.

## QUALIFIED IMMUNITY

Qualified immunity shields officials from having to pay for damages resulting from violations of § 1983 provided certain particular circumstances are present. "The doctrine of qualified

**CIVIL NO. 03-2238 (RLA)**                                                                **Page 12**

immunity 'provides a safe harbor for a wide range of mistaken judgments.'" Kauch v. Dep't for Children, Youth and Their Families, 321 F.3d 1, 4 (1st Cir. 2005) (citing Hatch v. Dep't for Children, Youth and Their Families, 274 F.3d 12, 19 (1st Cir. 2001)).

The Court will follow a three-part inquiry in ascertaining whether or not a defendant is entitled to protection. Initially, the Court will consider "whether the plaintiff's allegations, if true, establish a constitutional violation." Whalen v. Mass. Trial Court, 397 F.3d 19, 23 (1st Cir. 2005). If so, the Court will proceed to determine "whether the right was clearly established at the time of the alleged violation." *Id*. "Finally, we ask whether a similarly situated reasonable official would have understood that the challenged action violated that right." *Id*.

Thus, "qualified immunity remains available to defendants who demonstrate that they acted objectively reasonably in applying clearly established law to the specific facts they faced." Burke v. Town of Walpole, 405 F.3d 66, 8 6 (1st cir. 2005). In other words, whether "an objectively reasonable official in the defendants' position would not necessarily have understood that his action violated plaintiff's rights". Whalen, 397 F.3d at 28.

Because qualified immunity is an affirmative defense it is defendant's burden to present evidence of its applicability. Dimarco-Zappa, 238 F.3d at 35.

Defendants initially contend that plaintiff failed at the first step in that no constitutional violation has been alleged. In the alternative, defendants argue that their conduct was "objectively reasonable".

However, the motions currently before the Court are not summary judgment petitions but rather the requests are premised on the failure to state a claim under Rule 12(b)(6) and judgment on the pleadings pursuant to Rule 12(c) both of which mandate that the Court accept all factual allegations of the pleading as true. As previously discussed, the Amended Complaint specifically charges defendants with violations of decedent's Fourth Amendment and Due Process rights. Based on the facts as plead the Court cannot possibly infer defendants' objective belief that their conduct was constitutionally sound.

Accordingly, the qualified immunity defense is found inapposite.

**SUPPLEMENTAL JURISDICTION**

Because we have declined defendants' requests to dismiss the federal claims, we shall retain supplemental jurisdiction over the pendent state-law claims pursuant to 28 U.S.C. § 11367.

**CIVIL NO. 03-2238 (RLA)**                                                                              **Page 14**

## CONCLUSION

Based on the foregoing, defendants' Motion to Dismiss (docket No. **62**)[2] and the Motion for Judgment on the Pleadings (docket No. **63**)[3] are hereby disposed of as follows:

- The allegations against Santiago and Perez-Febus in their capacity as supervisors in this case are hereby **DISMISSED**. Judgment shall be entered accordingly.
- The remainder of the requests are hereby **DENIED**.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 2nd day of July, 2007.

                                        S/Raymond L. Acosta
                                        RAYMOND L. ACOSTA
                                        United States District Judge

---

[2] *See*, Opposition (docket No. **71**).

[3] *See*, Opposition (docket No. **73**).